DANI15L/, J.
The controversy in this case hinges '"'mainly on the proper construction of the provision of the »5th section of the 19th chapter of the Code of 1849, requiring an action for any articles charged in any store account to be brought within two years next after the right to bring the same shall have first accrued; and in order to ascertain such Construction, it is necessary to look somewhat into the history of our legislation and judicial decisions upon the subject.
The first act, the provisions of which it seems to me necessary to notice particularly, is the act of 1748, entitled “an act prescribing the method of proving book debts.” 6 Hen. Stat. at Barge, p. 53. The preamble recites: Whereas the trade of merchandise in this colony is chiefly carried on by retail, and the goods and merchandises are often delivered to the buyer by the retailer himself, and it frequently happens that nobody is privy thereto but the buyer and seller, so that in many cases there may be a defect of legal evidence to charge such buyer, and by that means a fair trader may be hindered from recovering a just debt; and the act then proceeds to declare that in any action of debt or upon the case where the plaintiff shall declare upon an emisset or indebitatus as-sumpsit for goods, wares or merchandises by him sold and delivered to any other person or persons, and upon the trial of such action such plaintiff shall declare upon his oath, that the matter in dispute is a store account, and that he hath no means to prove the delivery of the articles therein contained, or any of them, but by his store book; in that case, such book may be given in evidence at the trial, if he shall make out by his oath that such book doth contain a true account of all the dealings, or the last settlement of accounts between them, and that all the articles therein contained were bona fide delivered, and that he hath given all just credits due to the defendant in such account; and such book and oath shall be admitted and *received as good evidence for any of the articles for goods delivered within two years before the same action brought, but not for any article of a longer standing, unless the defendant shall have removed out of the county where he resided at the time of his contracting the debt, and then within three years before action brought.
It is not necessary to advert to the act of 1732, 4 Hen. Stat. at Barge, p. 329, which is repealed by the 5th section of the act aforesaid of 1748, further than to observe that it is substantially, as well in its preamble as in all its provisions relating to the matter in hand, identical with the act of 1748, with the exception that the period within which the goods are -to be delivered is eighteen months instead of two years.
The act next to be noticed is that of 1779, which is entitled “an act for discouraging extensive credits, and repealing the act prescribing the method of proving book debts.” After reciting that the method of proving book debts, and the long and extensive credits formerly given by merchants and traders, had been found by experience injurious to the people of this commonwealth, this statute repeals the act of 1748, and then proceeds to declare that all actions founded upon accounts for goods, wares and merchandise sold and delivered, or for any articles charged in any store account, shall be sued within six months next after the cause of such action, or the delivery of such goods, wares and merchandise, and not after; it requires the date of the articles charged in anj' such account severally to be particularly specified; affixes a penalty to the post-dating of any article in such account; and makes it the duty of every court and jury before whom any such action shall be tried, ex officio to take notice of the act, although the defendant may fail to plead it.
By the act of 1789 (13 vol. Hen. St. p. 5) the act *of 1779 is altered to the extent of requiring, that the period of limitation for suits on store accounts shall be one year instead of six months, and that a defendant intending to rely upon such limitation shall plead it.
In the case of Tomlin & als. v. Kelly, 1 Wash. 190, decided in 1793, the jury found a special verdict in the following words: “We find for the plaintiffs one hundred pounds nine shillings six and a half pence damages, if the court shall be of opinion that an action can be maintained for goods, wares and merchandises imported for sale by the plaintiffs who kept no retail store, but who sold the same at public auction on a wharf, and delivered them to the defendant twelve months before this suit was brought — otherwise for the defendant.” The District court gave judgment for the defendant upon the verdict, and the plaintiffs obtained a supersedeas from this court.
In the course of the argument before this court it was urged that the mischief which it was the aim of the act of 1779 to remedy, existed only in the retail business, which almost entirely formed the internal commerce of this country before the war, and of course must have been alluded to by the legislature; and that additional proof that the retail trade alone was contemplated, was to be derived from the clause of the law requiring each item in the account to be truly dated. In answer to this, it was said that the second clause of the act created a bar against all actions *892 founded upon accounts for goods sold and delivered, or for any articles charged in any store account; and why (it was asked), if the law only meant store accounts, was the former part of that clause inserted, as the latter would have answered the purpose? It was also further said, that if it were politic to prevent extensive credits in the confined sales of a retail store, the reason applied a fortiori to extensive wholesale ^negotiations; if it were wise to prevent such credits when the dealings were transacted in a house by private bargain, it was equally so when the sale was upon a wharf, at public auction. The judgment of the District court was reversed by this court without dissent; and as the opinion of the court is very brief, I give it in the language of the president (Pendleton) :
“In discussing the case of Beall v. Ed-mondson (he says), it was agreed, b3r the unanimous opinion of a full court, that the act of 1779 applied only to the store accounts of retail dealers; and we should feel ourselves bound by that, opinion, unless it were overruled by as full a court, even if our sentiments at this time, respecting the principle then established, were different from what they then were. But the present court retain the same opinion upon the subject; and must therefore pronounce the law to be in favor of the plaintiff, upon the special conclusion of the verdict.”
On referring to the case of Beall v. Ed-mondson (3 Call 514), mentioned in t&e foregoing opinion, it will be seen that it was the case of a suit for goods, wares and merchandise, in which the jury found a special verdict for the plaintiff, subject to the opinion of the court, whether an express assumpsit of the defendant took the debt out of the act of 1779. The true question submitted to the court in that case, it will be seen, was whether the statute of 1779 had any application to the case of an express promise by the defendant to pay the amount of a store account; and in their written opinion the3r confined .themselves to that question, and held that the statute applied only when it was necessary for the plaintiff to produce and rely on his account, and did not embrace the case of an express promise to pay, upon which a suit might be maintained without the account. The court in their written opinion say nothing as to the act of 1779 applying *only to the store accounts of retail dealers; but we have the statement of the president (as has been seen), that in the discussion of the case,.such was agreed as the unanimous opinion of the court. This interpretation of the act of 1779, as .agreed in Beall v. Edmondson, and adjudged in Tomlin v. Kelly, was doubtless well known to our legislature, when they came to revise the laws in 1819; and we find that the provision in question is then re-enacted in the words of the act of 1779, with the exception that the period of limitation is .made (as had been done in 1789) one year in the place of six months. See 1 Rev. Code 1819, ch. 128, i 7.
In the case of Moore v. Mauro, 4 Rand. 488, decided ,b3r this court in 1826, the declaration was in assumpsit for goods, wares and merchandise sold and delivered; and there was a special plea that the action was founded on an account for goods, &c., and that the supposed cause of action did not accrue within one 3rear. To which there was a special replication, that at the time of the sale of the goods, “the plaintiff and the defendant were merchants, and that the goods were sold and delivered by the plaintiff as such merchant, to the defendant as such merchant.” The only question before .the court (necessary to be noticed here) was as to the effect of the special replication. The replication was founded on the saving, in the 4th section of the act of 1819, in favor of ‘ ‘such accounts as concern the trade of merchandise between merchant and merchant, their factors and servants;” and it was objected in the argument that this saving did not apply to the actions mentioned in the 7th section of said act. In noticing this objection, the president (Brooke), delivering the opinion of the court, said, “It would be strange indeed if this construction was to prevail; if an action of indebitatus assumpsit between merchant and merchant is not to be barred by the saving in the *act after five years, but is to be barred before, that is after one year. This objection was not well considered, or it would not have been made. In Tomlin v. Kelly, 1 Wash. 190, it was decided by this court that the act of 1779 applied only to the store accounts of retail dealers.”
It is perhaps as convenient to state here as any where else, that I cite the case of Moore v. Mauro simply for the purpose of showing that this court still regarded the act of 1779, and consequently the 7th section of the act of 1819, as applying only to the store accounts of retail dealers. There is no ground whatever for supposing that this case can be brought within the saving of the 5th section of the 149th chapter of the present Code relating to accounts concerning the trade of merchandise between merchant and merchant, as that saving in its very terms applies only to cases ‘ ‘where the action of accounts would lie;” and this is obviously not a case of that character: Eor it is now well established by the English as well as the American decisions, that the saving in the act, 21 James 1, ch. 16, applies only to cases where the accounts are between merchant and merchant, relate actually to merchandise and not merely to mercantile contracts connected with it, and are current and mutual; in which last designation is not included cases where the demand, is altogether .on one side, though pa3Tnents on account have been made. Inglis v. Haigh, 8 Mees. & Welsb. 781, and notes; Spring & als. v. Gray’s ex’ors, 6 Peters’ R. 151; Toland v. Sprague, 12 Peters’ R. 300; Coster & als. v. Murrays, 5 John. Ch. R. 522; Murray v. Coster, 20 John. R. 576; 1 Rob. New Pr. 592-3-4-5; Rep. Revisors, note 472.
The case of Moore v. Mauro is, however, *893 as I have already said, useful i'or the purpose of showing- that this court in 1826 gave to the saving in the act of 1819 in relation to store accounts, the same construc-tiou which, *in 1790 and 1793, in the cases of Beall v. Edmondson and Tomlin v. Kelly, it had given to the like saving in the act of 1779; a construction which we have every reason for supposing has been received and acted upon by the courts and the members of the profession in the state generally as the true one. See 2 Tuck. Comm. 153; Tate’s Digest, notes, 649.
Such was the state of the law on the subject (with the exception that in 1838 the time was changed from one year to two years) when the legislature came to act on the report of the revisors in 1849. In the 5th section of ch. 149, as reported by them, all actions upon contracts not in writing were placed on the same footing and made subject to a limitation of three years, except actions of account by one partner against another for a settlement of the partnership accounts, or concerning the trade of merchandise between merchant and merchant, their factors or servants, and actions on the case between such parties for not accounting ; in either of which cases the parties were allowed five years after a cessation of their dealings, in which to bring their actions. Under this section, as recommended by the revisors, there was no distinction between store accounts and any other accounts (other than those expressly saved). The legislature, however, whilst adopting the other provisions of the section in the very words of the revisors, refused to alter the existing laws in respect to the limitation on open accounts generally, and the limitation on store accounts, and required that actions on the former should be brought within five years, and on the latter, within two years.
The question as to the propriety of adhering to the peculiar policy (known only to the laws of this state and the state of Kentucky) which had prevailed since 1779, of placing the accounts of retail dealers, with their customers, on a special footing, or of abolishing ;!'the restriction, and placing them on the same level with other accounts generally, could not have been more distinctly presented to the mind of the legislature. If, therefore, in rejecting the recommendation of the revisors in this regard, and in inserting the provision in respect to such accounts, the legislature had adopted said provision precisely as it had stood in all the preceding acts on the subject, I cannot conceive how any difficulty or doubt could have arisen in respect to their intention. In such a state of things, no room, it seems to me, would have been left for the argument that they did not mean to confine the limitation to the store accounts of retail dealers exclusively; there would have been an inference of the most conclusive character that they were seeking to accomplish the same ends that the provision had been hitherto construed by the courts as designed to effectuate. In their omitting the words “for goods, wares and merchandise sold and delivered,” and retaining simply the words “action for any articles charged in any store account,” as the provision now stands, I can perceive no evidence whatever of a purpose on the part of the legislature to alter the effect which was attributed to the law in Tomlin v. Kelly. I cannot see how the provision, as it now stands, is less apt to express a purpose to restrict the limitation to the store accounts of retail dealers than it was when it also contained the words now omitted. The design and policy of the law as it formerly stood, were, and, as it now stands, are, as I conceive, through the instrumentality of short credits and frequent-settlements, likely to flow from its provisions, to offer some check to the loose, mischievous, and oftentimes ruinous running up of long accounts at the stores by inconsiderate and careless men and the members of their families. The transactions of the wholesale merchants with their customers do not seem to me to be within the mischief "which *such a la w can be reasonably regarded as designed to cure. The stricter method of conducting such a business, the magnitude of the transaction, and the character of the customers (most generally merchants also, attentive to and fully conscious of, the state of their accounts), -would of themselves seem to afford a protection against those evils which the legislature might well contemplate as the probable result of credits given by the retail merchants to their customers, if not in some degree restrained by a provision such as the one they have enacted.
In proceeding to apply these views to the instructions given to the jury by the Circuit court, it is scarcely necessary to say, that the propriety of both instructions must depend on the same question; inasmuch as the written acknowledgment by the defendants of the account of the plaintiffs, as well as all the items of the account, are of a date more than two years antecedent to the bringing of the action ; and the 7th section of chapter 149 of the Code gives to a plaintiff relying- on such a written promise the same number of years thereafter, within which to bring his action, that is prescribed in the 5th section for bringing the action on the original contract.
In propounding to the jury the other proposition contained in the instructions, it is obvious that the judge must have proceeded either upon the idea that the account of the plaintiffs, whether an account of wholesale or retail dealings between the parties, was barred by the limitation of two years, or, upon the assumption that the account was of the character last mentioned. Upon the first mentioned view of the instructions, the construction which I have given to the statute shows that they were erroneous; in the other alternative, the error in giving-the instructions is, I think, equally apparent. In the declaration the plaintiffs are styled as merchants and partners trad *894 ing under *the name, style and firm of Edwin Wortham & Co., and the defendants as late merchants and partners trading under the name, firm and style of Smith & Sampson. It was proved by a witness, that he as salesman for the plaintiffs, sold and delivered to the defendants, upon their orders, the articles mentioned in the account (filed), and that the account was correct; that from time to time, when the goods called for by each order were delivered, he rendered to the defendants a bill of particulars of the goods so delivered, and that he subsequently rendered to the defendants a full account of all the particulars, corresponding with the account. There was no evidence as to whether the defendants were merchants, or as to whether the plaintiffs were wholesale or retail merchants, or in respect to the character of the dealings as being by wholesale or by retail, further than such as appears from the face of the account proved to be correct, as just above stated. The account, however, does on its face show that every dealing or sale was mainly if not exclusively by the hogshead, barrel, box, bag, sack, piece, gross, dozen, &c. Such sales answer to the popular definition of wholesale dealings, and our legislature, in ascertaining in their tax laws who should be regarded as wholesale merchants, have, on one occasion if not on others, designated as such those whose sales were of the character just indicated. Sess. Acts 1839-40, ch. 2, l 7.
Because of the error of the Circuit court in respect to the instructions, the judgment ought to be reversed, the verdict set aside, and the cause remanded for further proceedings in accordance with the principles herein declared. The mode of pleading the act of limitations — simply “the act of limitations” — was irregular; but no objection was made by the plaintiffs to the receiving and entering the plea in that form; and it is difficult to suppose that they could have entertained *any doubt as to the particular limitation of the statute relied on. inasmuch as the declaration was filed at rules in August 18SS; and the. first item of the account bears date April 9th, 1852. I would not, therefore, have been willing to reverse the judgment because of such irregularity. As however the case has to go back on account of the error in the instructions, I think it would be proper to direct the Circuit court to strike out the plea, if the plaintiffs shall so insist, and give leave to the defendants to plead anew.
MONCURE and ROBERTSON, Js., concurred in the opinion of Daniel, J.
The following is the judgment of the court:
It seems to the court, that according- to the true construction of the provision of the 5th section of the 149th chapter of the Code of 1849, requiring actions for any articles charged in any store account to be brought within two years after said actions shall have first accrued, said provision does not embrace the wholesale dealings of importing and wholesale merchants, but applies exclusively to the store accounts of retail dealers with their customers ; and it appear*-ing to the court, from the certificate of the judge of the said Circuit court, that there was no evidence to show whether the account filed was of dealings by wholesale or by retail, other than what appears from the face of said account, proved to be correct, and that the evidence furnished by said account tends to show that the several sales and dealings between the parties were by wholesale and not by retail, it seems to the court that the instructions given by the'Circuit court were erroneous.
It seems further to the court, that the plea of the act of limitations by the defendants is defective in not stating on what provision of the statute the defendants *intended to rely; as however it is not probable that the plaintiffs could have been deceived or misled as to the purpose and meaning of the defendants, it appearing that the declaration was filed at August rules 1855, and that the first item of the account is dated on the 9th April 1852, the court would not reverse the judgment because of the defect aforesaid; yet as the judgment must be reversed, because of the error in the instructions, and remanded for a new trial, it seems to the court that the said Circuit court, before proceeding to said trial, should, if the plaintiffs shall so insist, require the said defendants, if they intend to rely on the act of limitations, to amend their pleading, and show distinctly on what provision or provisions of the law they design to rely.
Therefore, it is considered that the said judgment be reversed.